**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Henry Larkins,

        Plaintiff,                            Case No.  1:12cv139

        v.                                  Judge Michael R. Barrett

Regional Elite Airline Services, LLC, *et al.,*

        Defendants.

**OPINION & ORDER**

This matter is before the Court upon Defendants Regional Elite Airline Services, LLC and Jannie Guzick's Amended Motion to Dismiss or in the Alternative Motion for Summary Judgment.  (Doc. 19).  Plaintiff Henry Larkins filed a Response (Doc. 20) and Defendants filed a Reply (Doc. 24).

**I.**    **BACKGROUND**

Defendant Regional Elite Airline Service ("Regional Elite") provides ticketing and baggage handling services.  (Doc. 1, ¶ 5).  Defendant Jannie Guzick worked in Regional Elite's human resources department as Director of People.  (Id. ¶ 13).  Plaintiff Henry Larkins worked as a Human Resources Generalist for Regional Elite at its Hebron, Kentucky facility, which provided services to the Cincinnati/Northern Kentucky International Airport ("CVG").  (Id. ¶¶ 6, 10).  Larkins is a 51 year old black male.  (Id. ¶ 7).

In March of 2010, Regional Elite announced a reduction in force at its CVG facility.  (Id. ¶ 12.)  Regional Elite explained that it would be closing its facility and eliminating all customer service and management positions at that location.  (Id. ¶ 12.)

Larkins met privately with Guzick, who informed Larkins that his position as a Human Resource Generalist would be eliminated and the two remaining Human Resources Generalists, located in Detroit and Minneapolis, would assume the responsibilities of his position. (Id. ¶¶ 13-14). Larkins offered to work out of Detroit, but he was informed that a lateral transfer was not available to him. (Id. ¶¶ 15-16).

Cory Knutson, who was a Customer Service Manager for Regional Elite, provided Larkins with a severance agreement and general release ("Release"). (Id. ¶¶ 17-18). The Release released certain rights in exchange for severance pay from Regional Elite. (See Doc. 1-1). The Release provides that:

> Employee forever discharges and knowingly, voluntarily, and unconditionally releases Regional Elite from and forever promises not to sue Regional Elite on any and all claims, demands, rights and causes of action he/she now has or may have against Regional Elite up to the date he/she signs this Release, including, but not limited to, claims of money, demands, rights and causes of action arising under Title VII of the Civil Rights Act of 1964, as amended by the Civil Right Act of 1991, the Age Discrimination in Employment Act (ADEA), . . . or any other federal law, state law, municipal law, common law, or action arising in equity, or in contract, or in tort, including

(Id.) Larkins executed the Release on his last day of work, June 1, 2010. (Doc. 1, ¶ 19). After Larkins signed the Release, Knutson informed him that his position had not been eliminated. (Id. ¶ 21). Instead, his position had been offered to Knutson, a 29-year old, white male with no previous human resources experience. (Id). Knutson informed Larkins that he had previously received an oral offer for the position, but was instructed to keep the offer secret until after Larkins had executed the Release. (Id. ¶ 22).

In his Complaint, Larkins brings the following claims: (1) race discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*; (2) race discrimination in violation of

Ohio Revised Code § 4112.02, *et seq.*; (3) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1); (4) age discrimination in violation of Ohio Revised Code § 4112.02, *et seq.*; (5) fraud; (6) intentional infliction of emotional distress; (7) negligent infliction of emotional distress; (8) conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985.

In their Amended Motion to Dismiss, Defendants argue that all of Larkins' claims should be dismissed for a failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In the alternative, Defendants argue that they are entitled to summary judgment on all claims.

## II. ANALYSIS

### A. Standard of Review

Defendants argue that this Court should consider Larkins' deposition testimony and treat their Motion to Dismiss as one for summary judgment. Larkins responds that a motion for summary judgment is premature because discovery is not complete. Larkins relies on his declaration, which details the additional discovery which needs to be completed and what specific evidence he expects to be produced as a result of that discovery. (Doc. 20-1, Henry Larkins Decl.).

The Court concludes that summary judgment is not appropriate at this time. Federal Rule of Civil Procedure 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify it opposition, the court may . . . defer considering the motion or deny it." However, to fulfill the requirements of the rule, the nonmovant must state with "some precision the materials he hopes to obtain with further discovery, and exactly how he expects those

materials would help him in opposing summary judgment." *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004) (quoting *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996)). Larkins has carried that burden here, and therefore, the Court will not consider Larkins' deposition testimony at this time.

When reviewing a 12(b)(6) motion to dismiss for failure to state a claim, this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). "[T]o survive a motion to dismiss, a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

### B. ADEA

Defendants argue that Larkins' claim for age discrimination under the ADEA should be dismissed because Larkins failed to allege discrimination based on age in the charge he filed with the EEOC, and therefore he failed to exhaust his administrative remedies. Defendants point to Larkins' Charge of Discrimination form, on which only the box indicating race discrimination is checked. (Doc. 1-2).

In response, Larkins points to his Intake Questionnaire.  (Doc. 11-1).[1]  On that form, completed by Larkins, Larkins states that his position was "given to another employee without [his] experience level" who was "a white male 20 years younger."  Larkins explains that the Charge of Discrimination form was drafted by an EEOC employee based on the Intake Questionnaire, and then sent to Larkins for his review and signature.  Larkins concedes that the box indicating age discrimination was not checked on the Charge of Discrimination, but points out that the facts contained in the Charge include a statement that Larkins "was replaced by a less experienced White employee."

"[A] plaintiff 'must file a charge with the EEOC before filing a complaint alleging age discrimination in federal court.'"  *Spengler v. Worthington Cyclinders*, 615 F.3d 481, 489 (6th Cir. 2010) (quoting *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998)).  A plaintiff's claims are "limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination."  *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998) (quoting *EEOC v. McCall Printing Corp.*, 633 F.2d 1232, 1235 (6th Cir. 1980)).  This is because "[t]he

---

[1]Defendants object to Larkins' reliance on the Intake Questionnaire (Doc. 11-1), as well as the Notice of Charge of Discrimination (Doc. 11-2) and the letter sent from the EEOC to Regional Elite requesting information and records relevant to Larkins' charge (Doc. 11-3).  Defendants argue that these are documents which were neither included in, nor referred to in the Complaint.  The Court acknowledges that as a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Federal Rule of Civil Procedure 56.  However, the Sixth Circuit has held that in determining whether to grant a Rule 12(b)(6) motion, matters of public record may be considered without converting the motion to one for summary judgment.  *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997).  This Court has specifically held that "[d]ocuments filed with, and coming from, the EEOC are considered matters of public record."  *Caplinger v. Uranium Disposition Services, LLC*, 2:08-CV-548, 2009 WL 367407, *2 (S.D. Ohio Feb. 11, 2009).  Therefore, the Court can properly rely on these documents, which were attached to Larkins' Response to Defendants' Motion to Dismiss, without converting the motion to one for summary judgment.

purpose of filing a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC so that the Commission may first attempt to obtain voluntary compliance with the law." *Id.* (citing *EEOC v. The Bailey Co., Inc.*, 563 F.2d 439, 447 (6th Cir. 1977)). However, when the plaintiff is proceeding *pro se*, the charge must be construed liberally in favor of the plaintiff because federal courts recognize that "subsequent actions should not be restricted by the failure of a complainant to attach the correct legal conclusion to the EEOC claim, conform to procedural technicalities, or include the 'exact wording which might be required in a judicial pleading.'" *Id.* (quoting *The Bailey Co.*, 563 F.2d at 447)).

In this instance, the Notice of Charge of Discrimination, which was sent to Regional Elite, specifically notified Regional Elite that a charge of employment discrimination under the ADEA had been filed against them. (Doc. 11-2). The EEOC also sent Regional Elite a letter requesting Regional Elite to submit "information and records relevant to the subject of Age Discrimination of Employment Act." (Doc. 11-3). Therefore, the age discrimination claim did not "grow out of the investigation," but was a part of the investigation from the very beginning.

Therefore, to the extent that Defendants' Amended Motion to Dismiss is based on Larkins' failure to exhaust administrative remedies before filing his ADEA claim, Defendants' Motion is DENIED.

### C. <u>Age discrimination under Ohio law</u>

Defendants argue that Larkins' claim for age discrimination under Ohio Revised Code § 4112.02 should be dismissed because Larkins failed to bring his claim within 180 days after the alleged unlawful discriminatory practice.

In Ohio, there are three avenues for a plaintiff to bring an age discrimination claim in court. Ohio Revised Code § 4112.02(N) is a general anti-discrimination statute providing for "any legal or equitable relief that will effectuate the individual's rights," including actions for age discrimination. Ohio Revised Code § 4112.14 explicitly addresses age discrimination with respect to any job opening or discharge and allows an individual to file a civil action. Finally, Ohio Revised Code § 4112.99 is a general anti-discrimination statute making those who violate § 4112 "subject to a civil action for damages, injunctive relief, or any other appropriate relief." This Court has explained that:

> There is no uniform statute of limitations for age discrimination claims under Ohio law. Section 4112.02(N) imposes an 180-day statute of limitations. Although § 4112.14 sets forth no explicit limitations period, the Ohio Supreme Court has construed it to be six years. *Morris v. Kaiser Engineers, Inc.*, 471 N.E.2d 471, 473 (Ohio 1984); *Meyer v. United Parcel Serv.*, No. C060772, 2007 WL 4554006, at *3 (Ohio Ct. App. Dec. 28, 2007). By contrast, the Ohio Supreme Court has held that the catch-all provision, § 4112.99, is subject to six-year statute of limitations unless a more specific statutory provision supercedes this period. *Cosgrove v. Williamsburg of Cincinnati Mgt. Co., Inc.*, 638 N.E.2d 991, 994 (Ohio 1994).

*Compton v. Swan Super Cleaners, Inc.*, 08-CV-002, 2008 WL 1924251 *3 (S.D. Ohio Apr. 29, 2008).

Larkins has not specified a provision of the Ohio Revised Code upon which his age claim is based. The Complaint merely refers to "Ohio Revised Code § 4112.02, *et seq.*" and the Response to Defendants' Motion to Dismiss does the same. The Sixth Circuit has explained that the responsibility for picking a section of Ohio Revised Code 4112 lies with the plaintiff claiming age discrimination, not the district court. *Wood v. Summit County Fiscal Office*, 377 F. App'x 512, 514 (6th Cir. 2010). The court

explained further that "[e]ven if it may be 'permissible to plead R.C. 4112.02, R.C. 4112.14 and R.C. 4112.99 simultaneously, and in the alternative, an aggrieved employee must elect his sole remedy when an employer files a motion to dismiss.'" *Id.* (quoting *Raub v. Garwood*, No. 22210, 2005 WL 662932, at *3 (Ohio Ct. App. Mar. 23, 2005)). The court affirmed the district court's dismissal of the plaintiff's Ohio age claim under the 180-day statute of limitations even though the plaintiff did not specify the statutory source of his claim. *Id.* at 515.

This Court finds that the 180-day statute of limitations applies. Therefore, to the extent that Defendants' Amended Motion to Dismiss is based on Larkins' claim for age discrimination under Ohio law being time-barred, the Motion is GRANTED.

### D. Failure to tender back payment

Defendants argue that Larkins' remaining claims for race discrimination, fraud, intentional infliction of emotional distress, negligent infliction of emotional distress, and conspiracy should be dismissed because Larkins did not tender back the payment he was provided in consideration for executing the Release.

Under the ADEA, the Supreme Court has held that an employee is not required to tender back payment before filing his or her claim. *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427, 428 (1998) (explaining that the "OWBPA sets up its own regime for assessing the effect of ADEA waivers, separate and apart from contract law" and therefore "[t]he statute governs the effect of the release on ADEA claims, and the employer cannot invoke the employee's failure to tender back as a way of excusing its own failure to comply.").[2] However, the Court's holding in *Oubre* has not been extended

---

[2]In 1990, Congress amended the ADEA by passing the Older Workers Benefit Protection Act ("OWBPA"). The OWBPA provides: "An individual may not waive any right or claim under

beyond ADEA claims to other federal anti-discrimination claims. *Gleich v. St. Andrew Sch.*, 2:10-CV-894, 2011 WL 4573367, *3 (S.D. Ohio Sept. 30, 2011) (citing *Halvorson v. Boy Scouts of Am.*, Case No. 99–5021, 2000 WL 571933, at *3 (6th Cir. 2000) (by retaining the consideration he received in returning for signing the agreement, the plaintiff ratified the agreement notwithstanding any duress, and therefore foreclosed his ADA, FMLA, and ERISA claims)); *Wright v. Apple Creek Dev. Ctr.*, 5:06CV0542, 2008 WL 818790, *3 (N.D. Ohio Mar. 24, 2008) (applying tender back rule to Title VII) (citing *Fleming v. United States Postal Serv.*, 27 F.3d 259 (7th Cir. 1994), *cert. denied*, 513 U.S. 1085 (1995)). Therefore, "the tender of consideration is a prerequisite to plaintiff's maintenance of a claim challenging the validity of a release in a non-ADEA context." *Bittinger v. Tecumseh Products Co.*, 83 F. Supp. 2d 851, 871 (E.D. Mich. 1998), *aff'd* 201 F.3d 440 (6th Cir. 1999); *see also Samms v. Quanex Corp.*, 99 F.3d 1139, 1996 WL 599821, *3 (6th Cir. 1996) ("The tender back of consideration received for a signed release is an absolute prerequisite to avoidance of the release under Michigan and federal law"); *but see Gascho v. Scheurer Hosp.*, 589 F. Supp. 2d 884, 891 (E.D. Mich. 2008) ("Even assuming that federal law requires that Plaintiff tender back the consideration that she received under the release, federal law does not require that the tender back be before, or contemporaneous with, the filing of the original complaint.").

Under Ohio law, "[a] release of a cause of action for damages is ordinarily an absolute bar to a later action on any claim encompassed within the release." *Haller v. Borror Corp.*, 552 N.E.2d 207, 210 (1990) (citing *Perry v. M. O'Neil & Co.*, 85 N.E. 41

---

[the ADEA] unless the waiver is knowing and voluntary. . . . [A] waiver may not be considered knowing and voluntary unless at a minimum" it satisfies certain enumerated requirements. 29 U.S.C. § 626(f)(1).

(Ohio 1908)). To avoid the bar, the plaintiff must allege that the release was obtained by fraud and tender back the consideration received for the release. *Id.* (citing *Manhattan Life Ins. Co. v. Burke*, 70 N.E. 74 (Ohio 1903)). As the Ohio Supreme Court has explained:

> Tender is only required, if the fraud alleged would render the release voidable. If the fraud alleged would render the release void, no tender of consideration is required and none need be alleged. . . . Whether a release of liability is void or voidable upon an allegation of fraud is dependent on the nature of the fraud alleged. A release obtained by fraud in the factum is void *ab initio*, while a release obtained by fraud in the inducement is merely voidable upon proof of fraud.

*Id.* (citations omitted).

Larkins argues that he has alleged fraud in the factum and therefore the release he signed as part of the Release is void and unenforceable. Larkins explains that he relied on Defendants' representation that his position would be eliminated. However, while Larkins alleges misrepresentation on the part of Defendants, he has not alleged that "he was misled into signing a paper which was different from what he intended to sign when he could have known the truth by merely looking when he signed." *Dice v. Akron, Canton & Youngstown RR. Co.*, 98 N.E.2d 301, 304 (Ohio 1951). Instead, Larkins has alleged a case of fraud in the inducement "in which the plaintiff, while admitting that he released his claim for damages and received a consideration therefor, asserts that he was induced to do so by the defendant's fraud or misrepresentation. The fraud relates not to the nature or purport of the release, but to the facts inducing its execution." *Haller*, 552 N.E.2d at 210.

Because Larkins failed to tender back the payment he received as part of his signing of the Release, he is barred from bringing his claims for race discrimination,

fraud, intentional infliction of emotional distress, negligent infliction of emotional distress, and conspiracy.[3]   However, Larkins is not barred from bringing his claim under the ADEA.

Therefore, to the extent that Defendants' Motion is based on Larkins' failure to tender back payment, Defendants' Motion is GRANTED as to Larkins' claims for race discrimination, fraud, intentional infliction of emotional distress, negligent infliction of emotional distress, and conspiracy.

### E.  Waiver

The Older Workers Benefit Protection Act ("OWBPA") amended the ADEA and "imposes specific requirements for releases covering ADEA claims."  *Oubre*, 522 U.S. at 424.  "The OWBPA provides: 'An individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary. . . . [A] waiver may not be considered knowing and voluntary unless at a minimum' it satisfies certain enumerated requirements."  *Id.* at 426 (quoting 29 U.S.C. § 626(f)(1)).  Among these requirements is that "the individual does not waive rights or claims that may arise after the date the waiver is executed."  29 U.S.C. § 626(f)(1)(C).  Accordingly, the Release signed by Larkins provided: "Employee acknowledges the consideration outlined in paragraph 3(a) and (d) above to be in full accord and satisfaction of any and all claims he/she has or may have against Regional Elite up to the date he/she signs this Release . . ."  Therefore, the Court concludes that the language of the Release does not cover a claim which arises after the date Larkins executed the Release.  In the Complaint, Larkins

---

[3]Larkins does not dispute that the separation agreement defines "Regional Elite" so as to include its "directors, officers, [and] managers" and applies to all claims against Defendant Jannie Guzick.

alleges that he executed the Release on his last day of work, June 1, 2010. (Doc. 1, ¶ 19). Larkins alleges that after he signed the Release, Knutson informed him that his position had not been eliminated. (Id. ¶ 21).[4] Therefore, Larkins' ADEA claim, which arose after he signed the Release, does not fall within the scope of the Release.[5]

Defendants argue that Larkins should have revoked the Release in accordance with the following provision in the Release:

> Employee declares that he/she freely and willingly gives this Release and was not forced in any manner to sign it. Employee understands that if he/she wishes to revoke this Release, he/she has fifteen (15) days from the date he/she signs the Release in which to make such a revocation, and the Release is not effective or enforceable until the fifteen (15) day revocation period has expired.

(Doc. 1-1). However, there is nothing in the Release which provides that the Release could only be revoked during the fifteen-day period. Moreover, Defendants have not cited any caselaw which holds that the failure to revoke within the prescribed period of time bars a claim under the ADEA. Instead, the Court notes that the ADEA provides that a waiver is not considered knowing an voluntary unless "the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual *may* revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired." 29 U.S.C. § 626(f)(1)(G)

---

[4]The Court notes that these allegations are consistent with the deposition testimony presented by Defendants in support of their motion for summary judgment. In his deposition, Larkins stated that he learned that Knutson was going to be working in the people generalist position on his last day of employment, June 1, 2010. (Doc. 19-2, at 4).

[5]The Court notes that "arose" is this context is to be distinguished from caselaw discussing the accrual of a claim for statute of limitation purposes. *Wagner v. NutraSweet Co.*, 95 F.3d 527, 533 (7th Cir. 1996) ("In release cases, the question is not when was the date of accrual, but rather whether the plaintiff is knowingly giving up the right to sue on some claims, or all claims that are in general terms predictable.") (citing *Fair v. International Flavors & Fragrances, Inc.*, 905 F.2d 1114, 1115-16 (7th Cir. 1990).

(emphasis added). Therefore, Defendants' Motion is DENIED as to Larkins' claim under the ADEA.

**III.** **CONCLUSION**

Based on the foregoing, Defendants Regional Elite Airline Services, LLC and Jannie Guzick's Motion to Dismiss (Doc. 5.) is **GRANTED in PART and DENIED in PART**:

1. Defendants' Motion is DENIED as to Larkins' claim under the ADEA;

2. Defendants' Motion is GRANTED as to age discrimination under Ohio law, race discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, race discrimination in violation of Ohio Revised Code § 4112.02, *et seq.*, fraud, intentional infliction of emotional distress, negligent infliction of emotional distress, and conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985.

**IT IS SO ORDERED.**

_____*/s/ Michael R. Barrett*_____
JUDGE MICHAEL R. BARRETT